STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 09-745


PHILIP SMITH, ET AL.

VERSUS

UNIVERSITY ANIMAL CLINIC, INC.


**********


APPEAL FROM THE
LAKE CHARLES CITY COURT
PARISH OF CALCASIEU, NO. 08-829
HONORABLE THOMAS P. QUIRK, CITY COURT JUDGE


**********


**BILLY HOWARD EZELL**
**JUDGE**


**********


Court composed of Billy Howard Ezell, J. David Painter, and Shannon J. Gremillion, Judges.


**AFFIRMED.**


**Stephen H. Vogt**
**P. O. Box 36**
**Baton Rouge, LA 70821-0036**
**(225) 923-3200**
**Counsel for Defendant/Appellee:**
**University Animal Clinic, Inc.**

**Michael Glenn Hodgkins**
**Bice, Palermo & Veron, LLC**
**P. O. Box 2125**
**Lake Charles, LA 70602**
**(337) 310-1600**
**Counsel for Plaintiffs/Appellants:**
**Philip Smith**
**Shannon Smith**

**EZELL, JUDGE.**

Phillip and Shannon Smith and the University Animal Care Clinic (Clinic) appeal the decision of the trial court in this case involving the loss of the Smiths' pet cat. For the following reasons, we affirm the decision of the trial court.

The facts in this case are undisputed. The Smiths boarded their five cats at the University Animal Care Clinic from April 28 until May 5, 2007. The identification tags on one of their cats, Girlie, were inadvertently switched with another cat. This ultimately led to Girlie being delivered to another client. Girlie then escaped from that client's home and was never found, despite great efforts by Ms. Smith and Clinic employees. The Clinic waived the $800 charges the Smiths incurred in boarding, examining, and vaccinating all their cats. The Smiths then filed this suit seeking emotional damages resulting from Girlie's loss.

The trial court ruled that the Smiths were entitled to emotional damages under La.Civ.Code art. 1998, but that the damages were not greater than the $800 the Clinic had already waived. Accordingly, no damages were awarded. Both the Smiths and the Clinic appeal the trial court's decision. The Smiths claim that the trial court's award was abusively low for the damages suffered. The Clinic claims that the trial court erred in finding that the Smiths were entitled to any damages under La.Civ.Code art. 1998.

We will first address the Clinic's claims that the trial court erred in awarding any damages under La.Civ.Code art. 1998. Louisiana law is clear that a domestic animal is considered corporeal movable property. *Holland v. Teague*, 43,496 (La.App. 2 Cir. 9/17/08), 996 So.2d 325.

> Louisiana courts have also recognized that plaintiffs, without regard to physical injury, may recover for emotional distress and inconvenience resulting from damage to their property, but only in the following four categories of cases: (1) when the property was damaged by an

1

intentional or illegal act; (2) when the property was damaged by acts giving rise to strict or absolute liability; (3) when the property was damaged by activities amounting to a continuous nuisance; and (4) under circumstances where the owner was present or nearby at the time the damage occurred and suffered psychic trauma in the nature of or similar to a physical injury as a direct result of the incident itself. Frank L. Maraist and Thomas C. Galligan, Jr., *Louisiana Tort Law* § 7.02[6] (2nd ed.2004). The jurisprudence, however, has limited such recovery by requiring that the emotional distress be severe and not merely the result of the usual worry or anxiety attendant to property damage. *See Farr v. Johnson*, 308 So.2d 884 (La.App. 2d Cir.1975).

*Doerr v. Mobil Oil Corp.*, 04-1789, pp. 8-9 (La.App. 4 Cir. 6/14/06), 935 So.2d 231, 237, *writ denied*, 06-1760 (La. 11/3/06), 940 So.2d 664 (footnote omitted)(alteration in original).

The Smiths' claims do not meet any of the criteria listed above for recovery of emotional damages for a property loss in tort, as they allege only negligence on the part of the Clinic. Nor did the Clinic's actions meet any of the remaining criteria listed above. However, the Smiths argue that a new, narrowly defined, contractually based fifth exception has been created for depositaries through the legislature and the 2004 Civil Code revision. They claim that the Clinic would be liable for damages as a depository in breach of what they allege amounts to a non-pecuniary contract under La.Civ.Code art. 1998. After a thorough analysis of the statutes at issue, we agree with the Smiths that they are now entitled to recover damages for mental anguish from the Clinic.

"A deposit is a contract by which a person, the depositor, delivers a movable thing to another person, the depositary, for safekeeping under the obligation of returning it to the depositor upon demand." La.Civ.Code art. 2926. Louisiana Civil Code Article 2930 (emphasis added) reads:

> When the deposit is onerous, the depositary is bound to fulfill his obligations with diligence and prudence.

When the deposit is gratuitous, the depositary is bound to fulfill his obligations with the same diligence and prudence in caring for the thing deposited that he uses for his own property.

Whether the deposit is gratuitous or onerous, the depositary is liable for *the loss* that the depositor sustains as a result of the depositary's failure to perform such obligations.

"The depositary is bound to use the same diligence in preserving the deposited thing that he uses in preserving his own property, a standard of diligence that, according to the civil code, is to be rigorously enforced when . . . he receives compensation for his service. . . ." 6 La. Civ. L. Treatise, Law Of Obligations § 15.7 (2d ed.). "Quite naturally, the depositary's liability is more extensive when his services are compensated." 6 La. Civ. L. Treatise, Law Of Obligations § 15.8 (2d ed.).

It is clear that in boarding their pet, the Smiths entered into a contract of deposit with the Clinic whereby they delivered property, Girlie, to the clinic for safekeeping and return. Further, it is undisputed that the Clinic failed to return the deposited object due to its own negligence. Accordingly, the Smiths are entitled to damages from the Clinic under the contract of deposit. However, to determine if the Smiths are entitled to recover the emotional distress damages they seek, we must examine the nature of the contract created with the Clinic closer.

Louisiana Civil Code Article 1998 provides:

Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.

Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.

Comment (b) to La.Civ.Code art. 1998 states that "'Nonpecuniary loss' means that which is known in continental doctrine as '*dommage moral*,' that is, damage of a

3

moral nature which does not affect a 'material' or tangible part of a person's patrimony." *See* Litvinoff, 'Moral Damages,' 38 La.L.Rev. 1 (1977)." Comment (c) to Article 1998 (first emphasis ours) goes on:

> A contract made for the gratification of a nonpecuniary interest means one intended to satisfy an interest of a spiritual order, such as a contract to create a work of art, or a contract to conduct scientific research, *or a contract involving matters of sentimental value.* In such a case, upon the obligor's failure to perform, the obligee may recover the damages he has sustained of a nonpecuniary or "moral" nature. See Litvinoff, *supra.* Thus, if a horse is bought for the purpose of showing it at an exhibition, the purchaser is entitled to recover for his disappointment and inconvenience if the contract is rescinded because of a redhibitory vice.

We find that the contract of deposit made between the Smiths and the Clinic to board Girlie was made for the gratification of a nonpecuniary interest and, because of circumstances surrounding its formation, the Clinic knew or should have known that its failure to perform would cause a nonpecuniary loss. The contract to board Girlie went beyond simply paying someone to feed a cat, it clearly involved something of a sentimental nature. The Clinic not only knew of this, but also advertised its services by noting the "tender loving care (such as brushing and cuddling)" they provided to keep boarded pets "happy and active." The Clinic noted that this special attention was required because "pets are like our children." The Clinic's website even included a special section dealing with the loss of a pet, noting:

> The loss of any close friend can be devastating, and pets can be among our closest companions. A pet frequently provides unconditional love, emotional security, and loyalty. Routine activities with an animal companion often provide structure, fun, relaxation, and social contact in our daily lives. The death of a cherished pet can mean the loss of an entire lifestyle as well as a devoted companion.

Because of the nature of the business the Clinic was in, and more clearly, the manner in which it held itself out to the public, the Clinic certainly knew that the boarding services it provided were rooted in reasons of a sentimental nature and that a failure

4

to render services properly would result in a non-pecuniary loss. As such, the Smiths are entitled to recover non-pecuniary damages from the Clinic under La.Civ.Code art. 1998 for the Clinics breach of the boarding contract.

Having determined that the Smiths were entitled to recover damages for their loss, we now turn to their assertion that the trial court erred in awarding only $800 in damages.

> It is well-settled that a judge or jury is given great discretion in its assessment of quantum, both general and special damages. Louisiana Civil Code article 2324.1 provides: "In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." Furthermore, the assessment of quantum, or the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review.

*Guillory v. Lee*, 09-75, p. 14 (La. 6/26/09), 16 So.3d 1104, 1116.

> In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited function if indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) "similar" injuries, see *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1977). However, absent an initial determination the trial court's very great discretion in the award of general damages has been abused under the facts of this case, the reviewing court should not disturb the trier's award. *Wilson v. Magee*, 367 So.2d 314 (La.1979).

*Rando v. Anco Insulations Inc.*, 08-1163, p. 41 (La. 5/22/09), 16 So.3d 1065, 1094.

Louisiana cases dealing with emotional damage awards for loss or injury to animals or other property are few and far between. However, the awards contained in those that do exist are nominal. *See Deblieux v. P. S. & Sons Painting, Inc.*, 405 So.2d 600 (La.App. 3 Cir. 1981) (wherein $3,000 was awarded for the loss of twenty-five cattle); *Quave v. Bardwell*, 449 So.2d 81 (La.App. 1 Cir. 1984) ($2,500 awarded for the unprovoked and intentional shooting of a dog); *Kling v. U.S. Fire Ins. Co.*, 146 So.2d 635 (La.App. 1 Cir. 1962) (plaintiff was entitled to $100 for loss of his terrier);

*Brown v. Crocker,* 139 So.2d 779, (La.App. 2 Cir. 1962)(award of $250 for shock and mental anguish of minor observing pain and suffering of his horse that was shot). These amounts are in line with such awards throughout the nation, which generally range between $500 and $2,000. Debra Squires-Lee, *In Defense of Floyd: Appropriately Valuing Companion Animals in Tort,* 70 N.Y.U. L. Rev. 1059 (1995). We find the award made by the trial court to be in line with awards made for similar losses in this state as well as nationally. More importantly, we do not find it to be an abuse of the trial court's vast discretion.

For the above reasons, we hereby affirm the decision of the trial court. Costs of this appeal are to be assessed to University Animal Care Clinic, including $156.50 for the deposition of Roberta Dowden.

**AFFIRMED.**