THERIOT, J.
| gDefendants-appellants, the St. Tammany Fire Protection District No. 6 (the fire department) and its insurer, American Alternative Insurance Corporation (AAIC), appeal the decision of the trial court awarding damages for inconvenience, loss of use, mental anguish, trauma, and emotional distress after an unoccupied fire truck rolled down a hill and crashed into the side of a house owned by plaintiffs-appellees, Ruth and Donald Sierra, Jr. For the following reasons, we affirm.
BACKGROUND
The facts are undisputed. On December 4, 2010, an unoccupied tanker fire truck was parked on the fire department’s property, which was located next door to the Sierras’ home in Bush, Louisiana. For some inexplicable reason, the fire truck rolled down the hill between the properties, and crashed through an outside wall of the master bedroom of the Sierras’ house. The crash caused a hole in the wall that exposed the Sierras’ master bedroom to the cold outside weather, and destroyed some of the bedroom furniture and furnishings. The Sierra family was not at their home at the time of the crash, because their severely disabled son, Corey, was in the intensive care unit at a hospital in Slidell. The St. Tammany Parish Sheriffs office telephoned Mr. and Mrs. Sierra, while they were at the hospital with Corey, to inform them of the incident and the damage to their home.
Fearing the worst, Mr. and Mrs. Sierra quickly made arrangements to leave Corey at the hospital while they frantically rushed to their house to assess the damage. When they arrived, they found many people at their house, including firemen who were removing debris from their home at the site of the crash. According to Mr. Sierra, his “wife was running around ... freaking out,” and they were both already stressed since they were dealing with their son being in the hospital, and their damaged house “just added to the plate.” The firemen turned |soff the electricity in the house due to the damaged electrical outlets, and they temporarily patched the large hole in the exposed master bedroom wall.
Although Fire Chief Harold Dutsch offered to provide a contractor who indicated that the repair work could be finished within two weeks of the incident, the Sierras opted to have Mr. Sierra do the repair work himself. They made that decision primarily because no one from the Sierra family could be present at the house while the renovations took place. Due to Corey’s disability (cerebral palsy with severe spastic neuropathy), Corey required around-the-clock total dependant care. Corey’s physician emphatically warned that Corey should not be exposed to a construction/reconstruction environment after he was released from the hospital. Thus, following the physician’s orders, the Sierras could not live in their home while it was repaired and they could not leave Corey alone. After staying a few nights on chairs at the hospital until Corey was released, the Sierras moved into the Cov-ington Staybridge Suites hotel with their children, Corey, Ashley, and Donald, III.
The Sierras lived at the hotel from December 7, 2010, to January 6, 2011, while Mr. Sierra repaired their home during his free time after work hours and on his days *1128 off from work. Throughout that 2010 holiday season, the entire Sierra family experienced stress, disappointment, and frustration, as they were dispossessed of their home and unable to enjoy their Christmas holiday traditions, as well as a planned New Year’s Eve birthday celebration for Donald, III. Additionally, it was extremely difficult for Mr. and Mrs. Sierra to care for Corey’s special needs without his usual nursing assistance and all of his medical equipment from their house, such as his special bed/mattress, lift, and bathtub that could not be moved to the hotel. After the repairs were finished and the Sierras moved back home, Mr. and Mrs. Sierra experienced anxiety when they heard the fire department’s daily sirens and starting of the fire truck engines for fear that another |4fire truck might crash into the master bedroom of their house. However, none of the Sierras sought medical advice, treatment, or counseling concerning their stress, fears, or anxieties.
The Sierras, including two of their children, Ashley and Donald, III, brought suit against the fire department and its insurer, AAIC, to recover for property damage and mental anguish they sustained as a result of the fire truck crashing into their home. It is undisputed that the Sierras’ homeowner’s insurer, State Farm Fire and Casualty Company (State Farm), paid for the Sierras’ hotel lodging while their home was being repaired, as well as compensated the Sierras for their physical property damage. AAIC then paid State Farm $25,174.64 in satisfaction of State Farm’s subrogation claim. By the time this matter went to trial on March 21, 2013, liability was no longer in dispute. The only remaining issues were the Sierras’ damage claims for their alleged mental anguish, emotional distress, loss of use, and inconvenience they experienced as a result of being dispossessed of their family home due to the fire department’s negligence. The fire department and AAIC urged the trial court to reject the Sierras’ damage claims as non-compensable, maintaining that the claims did not rise above the usual minimal worry associated with the consequences of this type of property damage.
After a bench trial, the trial court took the matter under advisement and then issued written reasons for judgment. The trial court specifically found that the Sierras were entitled to an award for damages for their inconvenience, loss of use, mental anguish, and emotional trauma for two weeks of the month that they were dispossessed of their home. The trial court reasoned that the Sierras were only entitled to two weeks worth of damages since that was the amount of time that it would have taken a hired contractor to complete the repair work. On May 17, 2013, the trial court signed a judgment against the fire department and AAIC, awarding Mr. and Mrs. Sierra $3,000 each and $1,000 each to Ashley and Donald, |BIII, plus interest and trial court costs. The fire department and AAIC timely appealed.
ASSIGNMENTS OF ERROR
The fire department and AAIC argue that:
(1) the Sierras’ claims did not meet the special circumstances for mental anguish for property damáge awards, because they only experienced ordinary inconvenience and worry as opposed to psychic trauma;
(2) the Sierra children, as non-owners, should not be allowed to recover for mental anguish or loss of use regarding the damaged property that was owned by Mr. and Mrs. Sierra; and
(3) the awards to the Sierras were unreasonably excessive for only two weeks of alleged mental anguish and emotional distress.
*1129 DISCUSSION
Louisiana courts have allowed recovery for negligently inflicted emotional distress, mental anguish, and inconvenience resulting from damage to property, absent physical injury, only in the following four categories of cases: (1) when the property was damaged by an intentional or illegal act; (2) when the property was damaged by acts giving rise to strict or absolute liability; (3) when the property was damaged by activities amounting to a continuous nuisance; and (4) under circumstances where the owner was present or nearby at the time, or shortly after, the damage occurred and suffered psychic trauma in the nature of or similar to a physical injury as a direct result of the incident itself. See Williams v. City of Baton Rouge, 98-1981 (La.4/13/99), 731 So.2d 240, 250 n. 5. See also Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law § 7.02[6] (2nd ed.2004). The jurisprudence has limited such recovery by requiring that the emotional distress be severe and not merely the result of the usual upset, worry, or anxiety attendant to property damage. Smith v. University Animal Clinic, Inc., 2009-745 (La.App. 3d Cir.2/10/10), 30 So.3d 1154, 1156, writ denied, 2010-0566 (La.5/28/10), 36 So.3d 247 (citing Doerr v. Mobil Oil Corp., 2004-1789 (La.App. 4th Cir.6/14/06)), 935 So.2d 231, 237, writ denied, 2006-1760 (La.11/3/06), 940 So.2d 664.
Every incident of property damage is necessarily accompanied by some degree of worry and consternation over such things as possible financial loss, settlement of insurance claims, and discomfort or inconvenience while awaiting and undergoing repair work. Trim v. South Eastern Exp., Inc., 562 So.2d 26, 28 (La.App. 5th Cir.1990) (citing Thompson v. Simmons, 499 So.2d 517, 520 (La.App. 2d Cir.1986), 501 So.2d 772 (La.1987)). Owners of damaged property may not recover for such mental anguish unless they prove that they suffered a psychic trauma in the nature of or similar to a physical injury, as a direct result of the property damage. Barrios v. Safeway Ins. Co., 2011-1028 (La.App. 4th Cir.3/21/12), 97 So.3d 1019, 1022-23; Elston v. Valley Elec. Membership Corp., 381 So.2d 554, 556 (La.App. 2d Cir.1980).
Since the Sierras’ home was not damaged by an intentional or illegal act, nor did the acts of the fire department constitute a nuisance or give rise to strict liability, the only possible criteria for recovery is the Sierras’ psychic trauma in the nature of or similar to a physical injury as a direct result of the incident itself. Mr. and Mrs. Sierra testified concerning their extreme stress levels as a result of dealing with a very sick child and a damaged home at the same time, their worries about Corey’s care, and how upset they were over the bedsores Corey developed while staying at the hotel, especially since the sores could have been prevented if Corey had been able to stay in his own bed and properly bathed at their house. The Sierras also testified about lingering anxiety after moving home, fearing that another truck might crash into their home every time they heard the daily fire truck engines and sirens. The trial judge stated in his written reasons that the entire family sustained loss of use of the home, which was set up for their specific needs. The children were affected in that their school and meal routines were |7detrimentally impacted. The trial court also emphasized that the displacement occurred during the Christmas holidays and the loss of use of the family home during the holiday period.
These circumstances obviously caused a great deal of mental anguish and emotional distress that amounted to more than minimal worry of being displaced from their home with a special needs family member. Their anguish was a direct *1130 result of being dispossessed of their house. There is no requirement that medical or psychiatric treatment be sought for mental anguish or emotional distress to occur. See Meyers v. Basso, 381 So.2d 843, 845 (La.App. 1st Cir.), writ denied, 384 So.2d 794 (La.1980). Thus, we conclude that there was a sufficient showing in the record to support the trial court’s award of damages for the Sierra’s mental anguish, emotional distress, inconvenience, and loss of use.
The fire department and AAIC assign as error the awarding of damages to the Sierras’ children, Ashley and Donald, who do not own the damaged property. We find no merit to that argument, and note that this court has previously affirmed an award to children of a family for mental anguish connected with their forced evacuation from their family home after a devastating train derailment damaged their home. See Cutrer v. Illinois Cent. Gulf R. Co., 581 So.2d 1013, 1023 (La.App. 1st Cir.), writ denied, 588 So.2d 1120 (La.1991). Similarly, the Louisiana Supreme Court affirmed mental anguish damage awards to direct heirs of property that sustained extensive damage from a wrongful trespass/excavation. See Williams, 731 So.2d at 250-251.
Finally, we address the contention that the trial court’s mental anguish damage awards were excessive. It is well-settled that appellate review of general damage awards require that much discretion be given to the trial court, such that a general damage award is rarely disturbed. La. Civ.Code art. 2324.1; Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 |8U.S. 1114,114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact. Youn, 623 So.2d at 1260. Thus, the role of an appellate court is not to decide what it considers to be an appropriate general damage award, but rather to review the exercise of discretion by the trier of fact. Id.
In the present case, the trial court awarded $3,000 each to Ruth and Donald, Jr., and $1,000 each to Ashley and Donald, III, in general damages for their inconvenience, loss of use, mental anguish, trauma, and emotional distress associated with the damage to their house. Upon reviewing the record in its entirety, and considering the mentally stressful, unusually demanding, and worrisome circumstances surrounding the care of the Sierras’ special needs family member, as well as the time of year the displacement occurred, we do not find the trial court’s general damage awards to the Sierras to be an abuse of discretion. We note that the trial court considered that the Sierras could have mitigated their damages and the amounts awarded reflect the failure to mitigate. Thus, we decline to disturb the amounts awarded to the Sierras.
CONCLUSION
For the stated reasons we affirm the trial court judgment. Costs of this appeal are assessed against American Alternative Insurance Corporation and St. Tammany Fire Protection District Number 6.
AFFIRMED.